UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

|   |   |
|---|---|
| GRICELY ROSA,<br><br>    Plaintiff,<br><br>v.<br><br>LAWRENCE HOUSING AUTHORITY,<br>BEATRICE GOMEZ,<br>MAGALY FERNANDEZ and LLAIDY<br>RODRIGUEZ,<br><br>    Defendants. | Case No. 18-cv-11576-DJC |

## MEMORANDUM AND ORDER

**CASPER, J.**                                                                                                       **July 20, 2021**

### I.  Introduction

Plaintiff Gricely Rosa ("Rosa") has filed this lawsuit against Defendants Lawrence Housing Authority, Beatrice Gomez and Llaidy Rodriguez ("Defendants") alleging violations of Mass. Gen. L. c. 151B, § 6 ¶ 7A(2), the Fair Housing Act ("FHA"), 42 U.S.C. § 3604(f)(3)(B), the Fair Housing Amendments Act ("FHAA"), the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12132 and Section 504 of the Rehabilitation Act of 1973, 29 U.S.C. § 794 ("Section 504").  D. 5.[1]  Defendants have moved for summary judgment, D. 35, and Rosa has filed a cross

---

[1] Rosa also named Magaly Fernandez as a defendant in the amended complaint, D. 5, but has failed to effect proper service on her.  D. 12.

1

motion for summary judgment, D. 44. For the reasons stated below, the Court ALLOWS Defendants' motion and DENIES Rosa's motion.

## II. Standard of Review

The Court grants summary judgment where there is no genuine dispute as to any material fact and the undisputed facts demonstrate that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). "A fact is material if it carries with it the potential to affect the outcome of the suit under applicable law." Santiago–Ramos v. Centennial P.R. Wireless Corp., 217 F.3d 46, 52 (1st Cir. 2000). The movant bears the burden of demonstrating the absence of a genuine issue of material fact. Carmona v. Toledo, 215 F.3d 124, 132 (1st Cir. 2000); see Celotex v. Catrett, 477 U.S. 317, 323 (1986). If the movant meets its burden, the non-moving party may not rest on the allegations or denials in its pleadings, Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 256 (1986), but must come forward with specific admissible facts showing that there is a genuine issue for trial, Borges ex rel. S.M.B.W. v. Serrano–Isern, 605 F.3d 1, 5 (1st Cir. 2010). The Court "view[s] the record in the light most favorable to the nonmovant, drawing reasonable inferences in his favor." Noonan v. Staples, Inc., 556 F.3d 20, 25 (1st Cir. 2009).

## III. Factual Background

The following facts are undisputed unless otherwise noted and are drawn from Defendants' statement of material facts, D. 36, Rosa's response to Defendants' statement of material facts, D. 44-1, and accompanying documents.[2] The Lawrence Housing Authority ("LHA"), a municipal

---

[2]Rosa filed a cross-motion for summary judgment, D. 44, but failed to file an accompanying statement of material facts. Local Rule 56(c) requires "that a summary judgment motion 'include a concise statement of the material facts of record as to which the moving party contends there is no genuine issue to be tried,' with citation to the record." Brown v. Armstrong, 957 F. Supp. 1293, 1297 (D. Mass.), aff'd, 129 F.3d 1252 (1st Cir. 1997) (quoting D. Mass. Local R. 56.1). In addition, in Rosa's response to Defendants' statement of material facts, D. 44-1, Rosa frequently asserts that she does not "[a]dmit or [deny] but does not consent" to Defendants'

housing authority and U.S. Department of Housing and Urban Development ("HUD") authorized public housing agency ("PHA"), is authorized to administer approximately 1,000 Section 8 vouchers pursuant to a contract with HUD. D. 36 ¶¶ 1-2. Rosa was a participant in the LHA-administered Section 8 voucher program, id. ¶ 9, and her claims arise out of allegations relating to LHA's failure to extend further the deadline for her use of a Section 8 voucher.

### A.     Rosa's Family Composition Modification Request

Sometime between 2010 and 2015, Rosa's daughter Yadielis Rosa ("Yadielis") moved out of Rosa's house and Rosa's voucher size was reduced to a one-bedroom. Id. ¶ 10; D. 44-1 ¶¶ 10-11. On or about January 1, 2015, Rosa began a one-year lease in a one-bedroom apartment on Haverhill Street in Lawrence, Massachusetts. D. 36 ¶¶ 11-12; D. 44-1 ¶ 12. Rosa delivered to LHA a medical accommodation request, dated February 13, 2015, from a physician at the Greater Lawrence Family Health Center ("GLFHC"), requesting the LHA "[p]lease allow patient's family members to move in with her into current residence as she would significantly benefit from the support they may provide for her multiple chronic psychiatric and medical problems." D. 36 ¶ 13; D. 44-2 ¶ 67. Rosa also delivered a February 18, 2015 notarized letter from Yadielis, authorizing Rosa to "act on [Yadielis' children] . . . behalf in all matters relating to legal, medical, school, and personal, including signing of all documents relating to these matters." D. 36 ¶ 12; D. 44-1 ¶ 13.

In May 2015, Rosa sought to have her two grandchildren move in with her. Id. Rosa explained to LHA that she wanted to modify her family composition because Yadielis was under investigation by the Department of Children and Families ("DCF") for neglect and Rosa wanted her grandchildren to move in with her. D. 36 ¶ 17; D. 44-2 ¶ 73. Beatrice Gomez ("Gomez"), a

---

statements of fact, id. These responses lack a factual basis for disputing Defendants' statements, and accordingly, such statements are deemed admitted for summary judgment purposes.

Section 8 Manager at LHA, told Rosa that HUD regulations governed the family composition and that proper procedures would need to be followed before the grandchildren could be added to the existing tenancy. D. 36 ¶ 20; D. 44-2 ¶ 73. Because Rosa's one-bedroom apartment did not have a de-leading certification, the LHA could not allow the grandchildren to move into the apartment. D. 36 ¶ 20. Gomez told Rosa that she would need to be released from her existing lease before she could relocate in the middle of a lease term. Id.; D. 44-2 ¶ 73.

On July 14, 2015, Rosa delivered a letter to LHA from her landlord stating that he agreed to release Rosa and LHA from the lease upon notice of Rosa's vacate date. D. 36 ¶ 23; D. 44-2 ¶ 75. Based on the anticipated vacate date, the LHA issued Rosa a new voucher, but the voucher was for a one-bedroom apartment rather than a 3-bedroom apartment. Id. LHA did not issue a 3-bedroom voucher because Rosa had failed to confirm modification of her family composition. D. 36 ¶ 24. Rosa refused to sign and accept the new voucher. Id.; D. 44-1 ¶ 25. On August 6, 2015, Damaris B. Rodriguez at GLFHC faxed an Authorization of Release of Protected Health Information to LHA Section 8 Program Representative Magaly Fernandez ("Fernandez"), signed by Rosa. D. 36 ¶ 25; D. 44-2 ¶ 79. LHA claims the Authorization contained no witness signature and none of the boxes specifying categories of documents to be released were checked. D. 36 ¶ 25; D. 44-1 ¶ 26. On September 29, 2015, Yadielis visited LHA and signed a CORI request form. D. 36 ¶ 28; D. 44-2 ¶ 83. By October 16, 2015, LHA completed the CORI check and cleared Yadielis for occupancy of a Section 8 subsidized apartment with Rosa. D. 36 ¶ 29; D. 44-1 ¶ 30. At some point in or around October or November 2015, Rosa filed a complaint with HUD, alleging LHA had discriminated against her. D. 36 ¶ 30; D. 44-2 ¶ 81. HUD "found that the issues raised are management issues rather than civil rights issues" and do "not constitute unlawful

4

discriminatory housing practices for which this office has the authority to investigate or grant relief under the Fair Housing Amendments Act." D. 36 ¶ 30; D. 44-1 ¶ 31.

### B. Rosa's Search for a 3-bedroom Apartment

On November 1, 2015, LHA issued Rosa a 3-bedroom Section 8 voucher, valid for 60 days. D. 36 ¶ 31; D. 44-2 ¶ 82. Defendants claim that by December 31, 2015, Rosa had not yet identified a 3-bedroom apartment to rent, D. 36 ¶ 32, and LHA extended the voucher term for an additional 60 days, id. In early 2016, Llairy Pagan ("Pagan") took over as Rosa's Section 8 Representative.[3] D. 36 ¶ 35. On or around February 22, 2016, Rosa signed and delivered a 30-Day notice to vacate to her landlord for a vacate date of March 29, 2016. Id. ¶ 33; D. 44-1 ¶ 34. Shortly after, on February 29, 2016, Rosa informed LHA that she was still unable to find a 3-bedroom apartment. D. 36 ¶ 34; D. 44-1 ¶ 35. Gomez advised Rosa to expand her search outside Lawrence and extended Rosa's voucher term another 60 days. Id. On March 2, 2016, Rosa provided LHA a letter from another GLFHC physician, stating that "[b]ecause of [Rosa's] multiple medical problems, it is important for her to stay in the Lawrence, MA area in order to receive the medical help that she requires." D. 36 ¶ 36; D. 44-2 ¶¶ 96-97. The letter also noted that the physician was "asking that reasonable accommadations [sic] be given for [Rosa] to have adequate time to find a suitable apartment." D. 36 ¶ 36.

On March 21, 2016, Rosa called Pagan to inform her that she had found a 3-bedroom apartment on Everett Street in Lawrence. D. 36 ¶ 37; D. 44-1 ¶ 38. Ultimately, however, the landlord of the Everett Street apartment rented the apartment to someone else. D. 36 ¶ 41; D. 44-1 ¶ 42. On April 4, 2016, Rosa filed a complaint with HUD and MCAD, alleging LHA

---

[3] Rosa identifies Llairy Pagan as Llaidy Rodriguez in her complaint. D. 5. Rodriguez is Pagan's maiden name. D. 36 ¶ 7. The Court will refer to her as Pagan here.

discriminated against her by refusing to make reasonable accommodations for a disabled tenant under M.G.L. c. 151B, § 4(6) and (7A), and Title VIII. D. 36 ¶ 40; D. 44-1 ¶ 41.

On June 20, 2016, LHA issued Rosa another Section 8 voucher for a 3-bedroom apartment. D. 36 ¶ 43; D. 44-1 ¶ 44. On July 28, 2016, MCAD dismissed Rosa's complaint. D. 36 ¶ 44; D. 44-1 ¶ 45. By late 2016, Rosa found and signed a lease for a 3-bedroom apartment at Union Street in Lawrence. D. 36 ¶ 46; D. 44-1 ¶ 47. By July 12, 2017, however, Rosa's landlord served LHA with a copy of a 7-day notice to quit and sought summary process against Rosa in Northeast Housing Court. Id. ¶¶ 49-50. Rosa and Pagan discussed the pending eviction on July 20, 2017. Id. ¶ 51. At this meeting, LHA issued Rosa a new 3-bedroom Section 8 voucher, along with a housing search form and tenancy package to assist her in her search for a new apartment. Id. On August 4, 2017, Rosa and her landlord entered into a stipulation which included a vacate date of January 2, 2018 and a waiver of Rosa's portion of the rent for September and October 2017. Id. ¶ 52. LHA extended the voucher term another 60 days. Id. ¶ 53.

On January 12, 2018, the Northeast Housing Court granted Rosa's motion for stay of execution, extending the vacate date to January 31, 2018. Id. ¶ 55. Rosa later moved for a further stay of execution to give her time to relocate to Chicago, which the Court denied on January 25, 2018. Id. ¶ 57. On February 1, 2018, Rosa met with Pagan at LHA and received another extended Section 8 voucher. Id. ¶ 58. On February 23, 2018, Rosa informed Pagan that she found an apartment in Haverhill, Massachusetts, and requested a transfer of her Section 8 voucher to Haverhill. Id. ¶ 59.

C.  **Rosa Files Suit Against the LHA**

On March 19, 2018, at the LHA office, Rosa told Gomez that she had lost the Haverhill apartment and was now homeless. D. 36 ¶ 60; D. 44-1 ¶ 61. She also told Gomez that she had

identified a 3-bedroom apartment on Haverhill Street in Lawrence, but that the landlord required $1,700 rent with no utilities included, which exceeded HUD's fair market value rent cap for a 3-bedroom Lawrence apartment.  Id.  On March 22, 2018, Gomez got the landlord to agree to a reduced rent of $1,539, which was 110 percent of the fair market value and the maximum LHA could authorize.  Id.  Rosa claims LHA refused to approve the accommodation from the beginning, inducing her to file a complaint against the LHA in the Northeast Housing Court, which she did on the same day.  D. 36 ¶62; D. 44-1 ¶ 62.  In that complaint, Rosa alleged that LHA violated the FHA, the Rehabilitation Act and the Age Discrimination Act.  D. 36 ¶ 62.  The housing court denied Rosa's motion for a temporary restraining order on April 10, 2018, finding that LHA had complied fully with HUD regulations and accommodated Rosa by increasing the rent cap to 110 percent fair market rent, negotiating the rent with the landlord and agreeing to request a 120 percent increase from HUD, if necessary.  Id. ¶ 68.

On April 2, 2018, an LHA inspector contacted the landlord to schedule an inspection of the Haverhill Street apartment.  Id. ¶66.  Defendants claim the landlord refused and told the inspector that he would not rent to Rosa because she had visited his home under the influence of drugs and was verbally aggressive.  Id.  Rosa denies entering the landlord's property.  D. 44-1 ¶ 67.  Defendants claim both Pagan and Gomez attempted to talk the landlord into leasing to Rosa again, but he refused.  D. 36 ¶ 67.  In June, Pagan provided Rosa with a new Section 8 voucher.  Id. ¶ 72; D. 44-1 ¶ 73.  She also provided Rosa with pages of available apartments in Lawrence, Methuen and Lowell.  Id.  On July 25, 2018, Rosa initiated the present action.  D. 36 ¶ 74; D. 44-1 ¶ 75.

### D. Rosa's Section 8 Voucher Expires Without Extension

On August 24, 2018, LHA mailed Rosa a notice of expired voucher and informed Rosa she had ten days to respond, which she did not do. D. 36 ¶ 77. Rosa claims she never received the letter as she was homeless at the time. D. 44-1 ¶ 78. When Rosa arrived at LHA on September 12, 2018 for her annual-reexamination appointment, Pagan informed her that her voucher had expired. D. 36 ¶ 78; D. 44-1 ¶ 79. On September 12, 2018, Rosa filed a motion to restore her case to the trial list at Northeast Housing Court. D. 36 ¶ 79; D. 44-1 ¶ 80. Rosa and LHA entered into a stipulation whereby LHA agreed to extend the term of Rosa's voucher to October 25, 2018 and assist her in locating a unit. D. 36 ¶ 80; D. 44-1 ¶ 81. During a September 27, 2018 meeting with Pagan, Rosa asked Pagan to modify her voucher to again add Yadielis. D. 36 ¶ 84; D. 44-1 ¶ 85. Pagan scheduled an appointment with Rosa and Yadielis for October 4, 2018 to discuss the modification but Rosa and Yadielis did not appear. D. 36 ¶ 84.

On October 12, 2018, Rosa's Section 8 voucher expired pursuant to the September 20, 2018 stipulation. Id. ¶ 86. LHA sent Rosa a letter stating she was no longer subsidized by the LHA Section 8 voucher program on December 10, 2018. D. 36 ¶ 87; D. 44-2 ¶ 129.

## IV. Procedural History

Rosa instituted this action on July 25, 2018. D. 1. On May 14, 2019, Rosa filed an amended complaint in this action. D. 5. Defendants now have moved for summary judgment, D. 35, and Rosa has cross-moved for summary judgment, D. 44. The Court heard the parties on the pending motions and took these matters under advisement. D. 47.

## V. Discussion

### A. Statute of Limitations

#### 1. *Claims Under the FHA*

8

A claim of discrimination under the FHA must be commenced "not later than 2 years after the occurrence or termination of an alleged discriminatory housing practice." 42 U.S.C. § 3613(a)(1)(A). "The computation of such 2-year period shall not include any time during which an administrative proceeding under this subchapter was pending with respect to a complaint or charge under this subchapter based upon such discriminatory housing practice." 42 U.S.C. § 3613(a)(1)(B). Here, Rosa claims Defendants violated the FHA by failing to accommodate her voucher request on July 25, 2015, issuing Rosa a one-bedroom instead of a 3-bedroom voucher. D. 44-2 ¶ 68. The alleged discriminatory act terminated on November 1, 2015 when the LHA issued the requested 3-bedroom voucher. Id. ¶ 93. Rosa filed a complaint with MCAD and HUD on April 4, 2016, D. 36 ¶ 40; D. 44-1 ¶ 41, which was dismissed on July 28, 2016, D. 36 ¶ 44; D. 44-1 ¶ 45. Given the 115 days in which the administrative proceeding was pending, discrimination claims stemming from LHA's actions that ended on November 1, 2015 should have been filed no later than February 24, 2018, pursuant to 42 U.S.C. § 3613(a)(1)(A) and (B). Rosa commenced this action on July 25, 2018. D. 1. Accordingly, these claims are time-barred.

        2.     *Claims Under M.G.L. c. 151B*

For claims of discrimination relating to housing, "complainants may elect at the outset to commence a civil action in court within one year of the allegedly discriminatory act, or file a complaint with the commission within 300 days." Grandoit v. Massachusetts Comm'n Against Discrimination, 95 Mass. App. Ct. 603, 604, review denied sub nom., Grandoit v. Bos. Hous. Auth., 483 Mass. 1104 (2019) (citing Mass. Gen. L. c. 151B, §§ 5, 9). Under the "scope of the investigation" rule, "a claim that is not explicitly stated in the administrative complaint may be asserted in the subsequent . . . action so long as it is based on the acts of discrimination that the MCAD investigation could reasonably be expected to uncover." Everett v. 357 Corp., 453 Mass.

585, 603 (2009) (quoting Windross v. Vill. Auto. Grp., Inc., 71 Mass. App. Ct. 861 (2008)).  The plaintiff, even a *pro se* plaintiff, must "describe the essential nature of the claim and . . . identify the core facts on which it rests" for the claim to fall within the scope of the investigation.  Lattimore v. Polaroid Corp., 99 F.3d 456, 464 (1st Cir. 1996).  "Failure to file a proper charge with the MCAD is fatal to a later claim filed in court under Chapter 151B."  Chatman v. Gentle Dental Ctr. of Waltham, 973 F. Supp. 228, 233 (D. Mass. 1997).  In addition, the "failure to name a party in a charge filed with the MCAD may preclude the plaintiff from later maintaining a Chapter 151B claim in court against that party."  Id.  To determine whether a party has been appropriately identified as a wrongdoer in a charge filed with the MCAD, "so as to support a subsequent civil action against that party," the Court must assess whether the MCAD charge "put that party's conduct at issue and if the party was on notice of the charge and had an opportunity to participate in the MCAD proceeding . . ."  Id. at 234.  If so, "the party appropriately may be named as a defendant in a later civil complaint alleging a violation of Chapter 151B."  Id.

      Here, Rosa filed her administrative complaint, dual-filed with MCAD and HUD, on April 4, 2016.  D. 39-5 at 2.  The complaint did not name either of the individual defendants, Gomez or Rodriguez (Pagan), listing solely the LHA as a respondent, D. 39-2 at 1; D. 39-4 at 1.  Rosa asserts claims, other than those relating to LHA's conduct through November 1, 2015 discussed above.  Namely, the operative complaint before this Court raises discrimination claims stemming from Rosa's voucher expiration in 2018.  These claims were not raised in the HUD or MCAD complaint as to any of the Defendants.  See generally, D. 39-2; 39-3.  Moreover, these claims are "based upon different facts that are separate and distinct both qualitatively and temporally" than the claims cited in the HUD and MCAD complaints.  Lattimore, 99 F.3d at 465.  The Court does not conclude that these later claims set forth in the amended complaint fall within the scope of the HUD or

10

MCAD investigation or could "reasonably be expected to grow out of the charge of discrimination" therein. 357 Corp., 453 Mass. at 606 (holding plaintiff's subsequent claims did not pass the scope test in part because "each claim was supported by distinct factual allegations").

Accordingly, the Court has jurisdiction to hear Rosa's claims stemming from the LHA's actions complained of in the administrative complaints (that are not otherwise time barred as discussed above), but does not have jurisdiction to hear Rosa's claims stemming from any alleged discrimination by LHA in 2018 or any alleged discrimination by Gomez and Pagan for lack of administrative exhaustion.

### B.  Qualified Immunity

Moreover, even if any of Rosa's claims as to the individual Defendants, Gomez and Pagan were not otherwise barred, qualified immunity bars these claims. Under the doctrine of qualified immunity, "government officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982). To prevail on a qualified immunity defense, a government official must demonstrate either (1) that the facts, construed in the plaintiff's favor, do not constitute a violation of the plaintiff's constitutional rights, or (2) that the right infringed upon was not clearly established at the time of the alleged violation. See Saucier v. Katz, 533 U.S. 194, 201 (2001); Pearson v. Callahan, 555 U.S. 223, 231–33, 236 (2009) (holding courts should be "permitted to exercise their sound discretion in deciding which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances in the particular case at hand"). "To be clearly established, a right must be sufficiently clear that every reasonable official would [have understood] that what he is doing violates that right," and "existing precedent must have placed

the statutory or constitutional question beyond debate." Reichle v. Howards, 566 U.S. 658, 664 (2012) (quotation marks and citations omitted). At the time of the official's actions, the constitutional right allegedly violated must be clearly defined in a concrete factual situation such that its contours are clear, unmistakable, and applicable to the conduct at issue. Anderson v. Creighton, 483 U.S. 635, 639 (1987).

Based on this standard, qualified immunity applies both to Gomez and Pagan. With regards to Gomez, Rosa fails to allege any facts sufficient to trigger liability. Rosa points to several instances in which Gomez denied Rosa's medical accommodation requests. D. 5 at 6. Rosa additionally points to a meeting she had with Gomez on May 22, 2015, which Rosa refers to as "the most pleasant and productive meeting that [she] had ever had with LHA." D. 5 at 7. At this meeting, Gomez agreed to help Rosa get out of her current lease and issue a voucher for another apartment. Id. Gomez, however, ultimately issued a voucher for another one-bedroom apartment, rather than the requested 3-bedroom apartment. D. 36 ¶ 24; D. 44-1 ¶ 25. Rosa alleges that for the Everett Street apartment she found in March 2016, the landlord required a letter from LHA certifying the approval. D. 5 at 9. She alleges Fernandez told her that Gomez refused and said Rosa should look for apartments outside Lawrence. Id.

Even construing these facts in Rosa's favor, Rosa does not present any admissible evidence that Gomez acted in a manner which might reasonably be deemed a violation of Rosa's constitutional rights. She does not allege, for example, that Gomez failed to issue Rosa a voucher for a 3-bedroom apartment or failed to provide a certification letter for discriminatory or unconstitutional reasons. Gomez explains that she issued a one-bedroom voucher, rather than a three-bedroom voucher, following the May 22, 2015 meeting, because "Ms. Rosa and Yadielis did not complete and/or submit the required documentation as instructed." D. 37 ¶¶ 21-22. The LHA

Administrative Plan's maximum term for a Section 8 voucher is 180 days, whereas Gomez extended Rosa's voucher fifteen months. D. 40 at 31. By March 2016, Gomez was no longer Rosa's Section 8 representative. D. 36 ¶ 35.

Likewise, turning to Rosa's claims against Pagan, Rosa alleges Pagan informed Rosa in March 2018 that one of her requests may be rejected by Pagan's supervisor due to its high cost, D. 5 at 3, and informed Rosa her voucher had expired in September 2018, id. at 2. Neither of these claims allege any discriminatory motive or behavior, nor do they allege any constitutional violations. Accordingly, without more, Gomez and Pagan are entitled to qualified immunity.[4]

### C. Reasonable Accommodation Claim

Even reaching the reasonable accommodation claims on the merits as to the LHA, they fail on this undisputed record. The FHA, Rehabilitation Act, the ADA and Mass. Gen. L. c. 151B prohibit discrimination in housing based on handicap. See 42 U.S.C. § 3604(f); 29 U.S.C. § 794; 42 U.S.C. §§ 12101 *et seq.*; Mass. Gen. L. c. 151B, § 4(6), (7A). The term "handicap" is defined as "(1) a physical or mental impairment which substantially limits one or more of [a] person's major life activities, (2) a record of having such an impairment, or (3) being regarded as having such an impairment." 42 U.S.C. § 3602(h); see Mass. Gen. L. c. 151B, § 1(17) (same language). The types of discrimination prohibited by the FHA include the "refusal to make reasonable accommodations in rules, policies, practices, or services, when such accommodations may be necessary to afford [a handicapped] person equal opportunity to use and enjoy a dwelling." 42

---

[4] Fernandez, Rosa's Section 8 voucher representative until early 2016, D. 36 ¶ 35; D. 44-1 ¶ 36, was named in Rosa's amended complaint, D. 5, but was never served, see D. 12. Even if, however, Fernandez had been served, Rosa's claims against Fernandez would still be barred by qualified immunity, as none of Rosa's claims against Fernandez allege any discriminatory motive or behavior, nor does she allege any constitutional violations. See D. 5 ¶¶ 43, 45-46.

U.S.C. § 3604(f)(3)(B); see Mass. Gen. L. c. 151B, § 4(7A)(2).  "A 'reasonable accommodation' is one which would not impose an undue hardship or burden on the entity making the accommodation."  Peabody Props., Inc. v. Sherman, 418 Mass. 603, 608 (1994) (holding that reasonable accommodation of tenant's handicap under FHA did not preclude landlord from evicting tenant for drug activity on the premises).  The FHA's requirement for 'reasonable accommodations' calls for "a balance between the statutory rights of the handicapped . . . and the legitimate interests of federal grantees in preserving the integrity of their programs."  City Wide Assocs. v. Penfield, 409 Mass. 140, 142 (1991) (quoting Alexander v. Choate, 469 U.S. 287, 300 (1985)).  Thus, "[t]he determination whether a requested accommodation is reasonable is fact specific and will be resolved on a case-by-case basis."  Andover Hous. Auth. v. Shkolnik, 443 Mass. 300, 307 (2005).

To prevail on a reasonable accommodation claim, a plaintiff must show:  (1) a qualifying disability; (2) knowledge on the part of the defendant of the disability (or that the defendant reasonably should have known of the disability); (3) a request for accommodation that is both reasonable and necessary to allow equal opportunity for use and enjoyment of the housing; and (4) that the defendant refused to make the requested accommodation.  Astralis Condo. Ass'n v. Sec'y, U.S. Dep't of Hous. & Urban Dev., 620 F.3d 62, 67 (1st Cir. 2010).

    *1.*    *Qualifying Disability*

To state a claim of disability discrimination, a plaintiff must allege a disability that would meet the statutory requirements.  Although Defendants appear to dispute in the first instance that Rosa has a disability (at least to the extent that she alleges that her psychiatric and mental problems "substantially limit" a "major life activity"), see D. 40 at 42, she has proffered evidence that indicates the Social Security Administration found Rosa to be disabled as of March 20, 2011, D.

14

5-1 at 7, and that medical doctors have confirmed the extent to which her disability limits her ability to perform major life activities, see, e.g., D. 5-1 at 9; D. 5-1 at 10-21.  Accordingly, the Court assumes, without deciding, that Rosa has a disability for the purposes of considering her reasonable accommodation claims.

          2.     *Reasonable and Necessary*

Defendants do not deny being aware of Rosa's alleged disability or rejecting her last accommodation request.  To satisfy the remaining third prong of a reasonable accommodation claims, Rosa must show that her request was "reasonable" and "necessary to afford person equal opportunity to use and enjoy a dwelling."   42 U.S.C. § 3604(f)(3)(B).   "[A] reasonable accommodation is required where there is a causal link between the disability for which the accommodation is requested and the misconduct that is the subject of the eviction or other challenged action."  Bos. Hous. Auth. v. Bridgewaters, 452 Mass. 833, 848 (2009).  Typically, "[a]n accommodation is 'reasonable' when it imposes no 'fundamental alteration in the nature of the program' or 'undue financial and administrative burdens'" on the defendant.  Batista v. Cooperativa de Vivienda Jardines de San Ignacio, 776 F.3d 38, 43 (1st Cir. 2015) (internal citation and quotation marks omitted).

Pursuant to HUD regulations, "PHAs must approve any additional search term if needed as a reasonable accommodation to make the program accessible to and usable by a person with disabilities."  Housing Choice Voucher Program Guidebook § 8.4 at 8-12.  The LHA policy also notes that "[i]f the family includes a person with disabilities and the family requires an extension due to the disability, the LHA will grant an extension allowing the family the full one hundred eighty (180) days search time," but "[i]f the LHA determines additional search time to be a reasonable accommodation, the LHA will request HUD to approve an additional extension."  D.

15

40 at 44; D. 37-1 at 23.  The Housing Choice Voucher Guidebook states that if the waitlist is long, "PHAs may wish to grant extensions only to those voucher holders who have demonstrated that they have made substantial efforts to locate housing or to those with extenuating circumstances." Housing Choice Voucher Guidebook § 8.5 at 8-12.

Here, on this undisputed record, Rosa fails to show a causal link between her disability and the alleged failures by LHA to accommodate her.  Over time, Rosa provides several letters from medical professionals, indicating that Rosa's housing needs and requests for accommodation were tied to her disability.  See, e.g., D. 5-1 at 10 (noting that Rosa "is suffering from a lot of stress and anxiety from her housing situation" and requesting the LHA "take this into consideration"); D. 5-1 at 18 (requesting LHA "consider giving more time to Ms. Rosa in order to find an apartment," as "[d]ue to her disability (depression, anxiety, bipolar disorder) and disabilities of her grandkids (grandson with Autism), she would benefit from more time and support in finding a proper apartment"); D. 5-1 at 19 (noting that "[b]ecause of [Rosa's] multiple medical problems, it is important for her to stay in Lawrence, MA area in order to receive the medical help that she requires" and asking LHA to "kindly consider increasing the amount of her housing voucher in order for her to obtain a suitable apartment") and LHA provided her multiple extensions of her Section 8 voucher to do so.

Even so, while a refusal to accommodate a disabled tenant may be discriminatory depending on whether the accommodations are "necessary to afford such person equal opportunity to use and enjoy a dwelling," 42 U.S.C. § 3604(f)(3)(B), Rosa fails to show that the accommodation requests she sought were necessary to afford her such an "equal opportunity" to housing.  LHA provided several extensions of her Section 8 voucher and such voucher was changed to a three-bedroom voucher as she sought for her grandchildren and Rosa has successfully

16

found an apartment on several occasions, see, e.g., D. 5 ¶ 3 (noting that Rosa located an apartment and received a lead certificate and occupancy certificate for the dwelling on March 15, 2018), and has described her ability to find properties online, communicate with property owners regarding her housing situation, visit properties and agree to leasing terms, id. ¶¶ 24-37.  Without more, Rosa fails to establish a "causal link" between her disabilities, for which she sought accommodation, and her inability to find an apartment within the time allotted.  Bridgewaters, 452 Mass. at 848.

"[I]ndefinite requests for 'more time' to address a disabling condition" are not reasonable.  Andover Hous. Auth., 443 Mass. at 312 (citing Russell v. Cooley Dickinson Hosp., Inc., 437 Mass. 443, 455–456 (2002) (recognizing that reasonable accommodation does not require an employer to give an employee indefinite leave of absence to resolve medical issue)).  Defendants gave Rosa 15 months to find an apartment, significantly more than the 60 days required under the LHA Administrative Plan.  Mandating further extensions beyond what Defendants have already provided on this record, particularly when doing so prevents one of the more than 200,000 families in Massachusetts (11,000 of them in Lawrence) on the Section 8 waitlist from properly utilizing said voucher, D. 40 at 45, is not "reasonable."

**VI.  Conclusion**

For the foregoing reasons, the Court ALLOWS Defendants' motion for summary judgment, D. 35, and DENIES Rosa's motion for summary judgment, D. 44.

**So Ordered.**

/s/ Denise J. Casper
United States District Judge